# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 19-506


MARIE ELAINE WALKER

VERSUS

S.G.B.C., L.L.C.


**********

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-693-17
HONORABLE STEVE GUNNELL, DISTRICT JUDGE

**********

**JONATHAN W. PERRY**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, and Jonathan W. Perry, Judges.


**AFFIRMED.**

**Daniel W. Sparks**
**Sparks Law Firm, LLC**
**206 North Church Street**
**Jennings, Louisiana  70546**
**(337) 246-7300**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**S.G.B.C., L.L.C.**


**Kevin D. Millican**
**214 E. Nezpique**
**Jennings, Louisiana  70546**
**(337) 824-8300**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**Marie Elaine Walker**

**PERRY, Judge.**

Plaintiff sought recognition of a predial servitude/right of way allegedly established through thirty-years' acquisitive prescription. After a trial, the trial court granted judgment in favor of Plaintiff. Defendant appeals. For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This matter originates from a Petition for Recognition of Right of Way filed on October 11, 2017, by Plaintiff, Marie Elaine Walker. The property of Plaintiff (Walker property) is described as:

> An undivided $\frac{1}{2}$ interest in an undivided $\frac{1}{3}$ interest in and to the following: Lot 1 of the partition of John Simon property in Section 40, Township 8, Range 3, recorded in Book D, Page 279, and containing 22.5 acres, more or less, and LESS 2 acres in the Southwest Corner, located in Jefferson Davis Parish, Louisiana.

The Walker property, located in rural Jefferson Davis Parish, is landlocked, with Ponderosa Road being the closest public roadway. Ponderosa Road ends at the property of Defendant, S.G.B.C., L.L.C.[1] (Carlock property). The Carlock property, which Defendant purchased from Kenneth W. Deshotel, II (Deshotel), in October 2012, is described as:

> Beginning at a stake on the West bank of Bayou Nezpique Spencer and Morse TR located in Section 40, Township 8, Range 3, said stake being $1\frac{1}{2}$' North of a Cypress 6" in diameter marked X on West side South 89° 40" West 1505' to stake North 15° 15" East 394' to a stake in the South Line of right of way North 27° 15" West 108.15' South 85° 8' West 858.4' ETC, located in Jefferson Davis Parish, Louisiana.

In her petition, Plaintiff claimed she and her ancestors in title have accessed the Walker property for more than thirty years via a right of way through the property of Defendant and Defendant's ancestors in title. Plaintiff sought recognition of the

---

[1] S.G.B.C., L.L.C., is owned by Sandra Gail Byrnes Carlock. She and her husband, Ronald Joseph Carlock, reside on the Carlock property.

predial servitude because Defendant was "wrongfully denying [Plaintiff] and/or her family the use of the right of way to gain access to their adjacent property."

Defendant denied the existence of the right of way.[2] The matter proceeded to trial in March 2019.

At trial, Plaintiff averred that since at least 1969, she and her ancestors in title have used a path to cross the property that now belongs to Defendant. Plaintiff explained she first visited the Walker property in 1969 while dating her late husband, Allison Guy Walker, III (Skip). She inherited Skip's ownership interest in the Walker property in 2008. Plaintiff testified access to the Walker property has always been via the pathway at the end of Ponderosa Road, which goes through the Carlock property. According to Plaintiff, Skip's ancestors lived on the Walker property until the early 1940s and used the right of way. Plaintiff, likewise, used the right of way to visit the Walker property, and before his death, Skip regularly used the right of way to hunt on the Walker property. She recalled there being concrete markers labelled with "R/W" along the path. Plaintiff also testified as to the right of way depicted on Google Earth images which were introduced as evidence over Defendant's objections.

Plaintiff's forty-year-old son, Chris Walker (Chris), testified he has used the right of way to get to the Walker property since he was a child. Chris estimated he first encountered a problem using the right of way between 2010 and 2012, when the previous owner, Deshotel,[3] erected a fence. Chris was reported to authorities for removing the fence. He was able to use the right of way again, but only after

_____

[2] Concurrent with its Answer, Defendant filed a Dilatory Exception of Unauthorized Use of Summary Proceedings. The trial court granted Defendant's exception, thereby converting Plaintiff's action to an ordinary proceeding.

[3] From 2006 until 2012, Deshotel owned, but did not reside on, the property presently owned by Defendant.

receiving the assistance of the District Attorney, Michael Cassidy, who advised Deshotel that a right of way to the Walker property existed and that Chris would not be prosecuted for trespassing. Chris claimed Deshotel sold the property to Defendant not long after this incident occurred. Chris testified Defendant initially allowed him to use the right of way; however, in due course, Defendant also obstructed his use of the right of way to access the Walker property. Chris identified the path which he recognized as being the right of way on Google Earth images, and he recalled there being concrete markers labelled with "R/W" along both sides of the path, which he believed denoted right of way.

Plaintiff also presented co-owners of the Walker property, Warren Hoag (Hoag) and Joey Duhon. Both corroborated Plaintiff's claim that access to the Walker property has always been via the right of way through the Carlock property. Both also swore they used the right of way in excess of fifty years. In addition, a photograph was introduced into evidence showing Hoag standing near a deteriorating concrete maker labelled with "R/W" which he identified as being located near the property line separating the Carlock property and the Walker property. According to Hoag, several more concrete markers lined the right of way but, through the years, many disappeared.

Defendant, Sandra Carlock, testified she did not see any markings indicating a right of way in her pre-purchase inspection of the Carlock property. Defendant did, however, state she noticed "a little bit of road that went down to what is called the pumping station, which is our property, that you could tell that they would drive down to there, but nothing other than that." When asked how long after purchasing the Carlock property did people begin trying to cross through it, Defendant acknowledged, "From the very beginning[.]" Defendant never gave anyone permission to cross through her property, insisting she called the Sheriff's

Department if and when anyone did. Defendant did give Chris permission to cross once, but only because she did not want to argue in front of Chris' son. Defendant claimed there were occasions when Chris crossed her property by speeding through in his vehicle without permission. In order to prevent passage, Defendant and her husband placed landscape timbers or railroad ties.

Under cross-examination, Defendant identified the Carlock property on the Google Earth images which Plaintiff offered into evidence. She identified a gravel pathway, declaring it was a gravel path she and her husband reinforced since it led to a pumping station.

Defendant's husband, Ronald Carlock, denied seeing any indication of a right of way in the pre-purchase inspection of the Carlock property. He described noticing "an obvious old trail to a fuel tank, a concrete tank on the property." When asked if he had ever given Chris permission to cross through the Carlock property in order to access the Walker property, Ronald Carlock insisted, "Never." He testified Chris would sneak through the Carlock property a couple of times a year.

Defendant presented the testimony of Kenneth Deshotel, who testified that during his ownership of what is now the Carlock property from 2006 to 2012, he did not live on the property. Deshotel acknowledged that he was told a right of way existed by Chris and, although Deshotel tried, he could not stop Chris from using the path on his property to gain access to the Walker property. Under cross-examination, Deshotel identified the path on the Google Earth images which Plaintiff offered into evidence.

The matter was taken under advisement and post-trial memoranda were filed. On April 24, 2019, the trial court issued written Reasons for Ruling, finding:

> [T]he Plaintiff has demonstrated that she and her ancestors in title have acquired the right of way to their property through the defendant's property through thirty (30) years acquisitive prescription. The plaintiff

4

testified at trial that her late husband's family had owned and lived on the property until approximately 1940 when they moved to Jennings. Thereafter, her husband's family, her husband, and later herself and her children accessed their property through the defendant's property. [Plaintiff] testified that she began going to the Walker property in 1969 when she and her husband began dating and that she and her family have always accessed the property in the same way—through the path on [Defendant's] property. Despite the fact that [Ronald] and Sandra Carlock (the current owners) and Kenneth Deshotel (owner from 2006–2012) testified that they had never given permission for the plaintiff and her family to travel across their property, the Court finds that [Plaintiff] had already established the right of way by acquisitive prescription of thirty (30) years well before the Carlocks or Mr. Deshotel owned the property. As a result, [Plaintiff] cannot be considered a precarious possessor. [Plaintiff] and her ancestor/family used the right of way continuously and without interruption since the family moved off the property in 1940. While the family was living on the property, the family would have had to go down the right of way on a nearly daily basis to go to town and/or school since the property is landlocked. This is clearly notice of the Walker's intent to possess as owners. After reviewing the maps and photos offered by the parties, there is clearly a worn path that leads from [Defendant's] property to the Walker property. The property also contains concrete markers along side the path. The path was apparent to the parties as well as to the Court. Consequently, the Court will grant the plaintiff immediate and unobstructed access to her property through the path that the family has used since 1940.

In this suspensive appeal, Defendant contends the trial court erred in allowing unauthenticated Google Earth images into evidence and in recognizing Plaintiff's entitlement to a predial servitude/right of way by virtue of acquisitive prescription.[4]

## STANDARD OF REVIEW

Appellate courts review judgments relating to servitudes under the manifest error standard of review. *Allen v. Cotten*, 11-1357 (La.App. 3 Cir. 5/2/12), 93 So.3d 681. Under the manifest error standard of review, a trial court's findings of fact may not be set aside by an appellate court unless the record shows there is no reasonable basis for the trial court's finding and the finding is manifestly erroneous or clearly

---

[4] Because predial servitudes are charges on estates, the trial court's judgment specifically delineated by property description the servient and dominant estates and explicitly ruled "that the location of the Predial Servitude shall begin at the end of Ponderosa Road and continue across the Servient Estate [Carlock property] over and across the existing roadway to the point where it reaches the Dominant Estate [Walker property][.]"

wrong. *Stobart v. State, Dep't of Trans. & Dev.*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). "Errors of law are reviewed de novo." *Fontenot v. Town of Mamou*, 18-301, p. 3 (La.App. 3 Cir. 12/19/18), 262 So.3d 904.

## LAW AND DISCUSSION

*Admission of Google Earth Images*

"Generally, the trial court is granted broad discretion on its evidentiary rulings and its determinations will not be disturbed on appeal absent a clear abuse of that discretion." *Segura v. Comeaux*, 17-285, p. 4 (La.App. 3 Cir. 11/2/17), 279 So.3d 418, 421, *writ denied*, 17-2027 (La. 2/2/18), 235 So.3d 1109.

Defendant's first assignment of error challenges Plaintiff's introduction of three Google Earth images—dated January 2004, November 2005, and December 2017—which exhibit the alleged right of way through the Carlock property. Defendant contends these images were not properly authenticated, as required by La.Code Evid. art. 901, because Plaintiff did not: (1) have the creator of the images testify to their authenticity; (2) get a certification from Google that the images were what they purported to be; and (3) have an expert testify that the images were accurate depictions of what they claimed to be.

Plaintiff argues La.Code Evid. art. 901(B)(1) specifies the testimony of a witness with knowledge is sufficient to authenticate an item introduced into evidence. Plaintiff urges the Google Earth images were recognized by each trial witness, including Defendant, with each confirming the images showed Ponderosa Road, the Carlock property, the Walker property, and the path which Plaintiff purports is the right of way. Thus, Plaintiff submits the Google Earth images were conclusively authenticated in accordance with La.Code Evid. art. 901. We agree.

Authentication of evidence is "a condition precedent to [its] admissibility[.]" La.Code Evid. art. 901(A). "Authentication is a process whereby something is

shown to be what it purports to be." *State v. Magee*, 11-574, p. 41 (La. 9/28/12), 103 So.3d 285, 315, *cert. denied*, 571 U.S. 830, 134 S.Ct. 56 (2013). Louisiana Code of Evidence Article 901(B)(1)[5] provides the testimony of a witness with personal knowledge may support the authentication of evidence required for its admission.

At trial, Plaintiff identified the Google Earth images as showing the Walker and Carlock properties; the public roadway, Ponderosa Road, leading to the Carlock property; and the lane which Plaintiff alleges has been the only access point to the Walker property utilized by Plaintiff and her ancestors in title. The record reflects each image was subsequently recognized by each trial witness, including those witnesses called by Defendant. Hence, the trial court had sufficient support for its finding that the Google Earth images were authentic. Therefore, we find no abuse of the trial court's discretion in allowing the Google Earth images' introduction into evidence.

*Recognition of Predial Servitude Through Acquisitive Prescription*

Defendant's second assignment of error challenges the trial court's recognition of a predial servitude in favor of Plaintiff through Defendant's property. Defendant contends the trial court erred in ruling Plaintiff acquired a predial servitude by virtue of thirty-year acquisitive prescription when Plaintiff and her ancestors always had permission from the landowners to cross the property. Defendant argues Plaintiff and her ancestors in title have always been precarious

---

[5] Louisiana Code of Evidence Article 901(B) provides, in pertinent part:

By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this Article:

**(1) Testimony of witness with knowledge.** Testimony that a matter is what it is claimed to be.

7

possessors and, as such, cannot acquire a predial servitude/right of way by acquisitive prescription.

Plaintiff argues the evidence shows Plaintiff has met her burden of proof in establishing the existence of an apparent servitude by uninterrupted, peaceful possession of more than thirty years. She contends there is no error in the ruling of the trial court because there is no evidence Plaintiff and her ancestors in title are precarious possessors.

A predial servitude is either apparent or nonapparent. La.Civ.Code art. 707. An apparent servitude is "perceivable by exterior signs, works, or constructions; such as a roadway, a window in a common wall, or an aqueduct." *Id*. "Apparent servitudes may be acquired by title, by destination of the owner, or by acquisitive prescription." La.Civ.Code art. 740. The Louisiana Civil Code clearly states the laws of acquisitive prescription of immovable property apply to apparent servitudes. La.Civ.Code art. 742. "An apparent servitude may be acquired by peaceable and uninterrupted possession of the right for ten years in good faith and by just title; it may also be acquired by uninterrupted possession for thirty years without title or good faith." *Id*.

"Acquisitive prescription" is defined in the Louisiana Civil Code as "a mode of acquiring ownership or other real rights by possession for a period of time." La.Civ.Code art. 3446. "Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing." La.Civ.Code art. 3425. "One is presumed to intend to possess as owner unless he began to possess in the name of and for another." La.Civ.Code art. 3427. "Precarious possession" is defined as "[t]he exercise of possession over a thing with the permission of or on behalf of the owner[.]" La.Civ.Code art. 3437. The party alleging acquisitive prescription must establish that his possession has been continuous and uninterrupted, peaceable,

public and unequivocal. La.Civ.Code art. 3476. "Acquisitive prescription does not run in favor of a precarious possessor or his universal successor." La.Civ.Code art. 3477.

The question before this court is whether the trial court was correct in ruling the possession of Plaintiff and her ancestors in title was not precarious. There is no evidence Plaintiff was ever given permission. Plaintiff testified she and her ancestors in title always used the pathway as if it was their own. Defendant offered no evidence proving Plaintiff's possession was begun for another or with the permission of any of Defendant's ancestors in title. Based on the evidence, we find no error in the trial court's determination that Plaintiff's possession was continuous and uninterrupted, peaceable, public and unequivocal for decades before either Defendant or Deshotel became owners of the Carlock property. Plaintiff clearly possessed the pathway as owner, causing the burden to shift to Defendant to rebut the presumption of ownership. Defendant failed to present any evidence Plaintiff's possession was permissive; instead, Defendant and Defendant's witnesses incongruously denied ever giving anyone permission, much less Plaintiff, to use the pathway. Consequently, from our review of the record, we cannot conclude the trial court was manifestly erroneous or clearly wrong in finding that Plaintiff and her ancestors in title were not precarious possessors and, further, possessed the right of way through Defendant's property for over thirty years continuously, without interruption, peaceably, publicly, and unequivocally.

## DECREE

For the above reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to Defendant, S.G.B.C., L.L.C.

**AFFIRMED.**